IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORDAN HEATH, | ) | |
|     Plaintiff, | ) | Civil Action No. 13-281Erie |
| | ) | |
| v. | ) | District Judge Conti |
| | ) | |
| KEVIN DITTMAN, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendants [ECF No. 16] be granted. The Clerk of Courts should be directed to close this case.

**II.   REPORT**

    **A.  Relevant Procedural History**

This civil action was filed in this Court on September 9, 2013. Plaintiff, an inmate in state custody, brought this civil rights action alleging that his constitutional rights have been violated by Defendants. Plaintiff's *pro se* complaint reads:

> Inmate Heath is filing this emergency complaint to challenge Kevin Dittman authorities and the [illegible] I'm getting from him and Mr. Glenn McQuown, because I filed complaints against both employees or, 2 separate incidents. Inmate Heath have filed a grievance about not being served a Shabbat meal here inside the state Department of Corrections # 439760, in which is still pending, and Inmate Heath is being intimidated by both FCPD McQuown, and Food Services Supervisor Dittman, twice McQuown and Scarmeto sign off on #439760 – 1st was on December 21, 2012, 2nd was on January 5, 2013, 3rd was on Jan. 7th or 8th 2013. He came to my door with a withdrawal term in hand. Then I refused to sign off and ever since I filed this complaint I've been getting spoiled items that caused me to inch [sic] and scratch til the point I lose hair on my head, face etc.

1

> and I find all types of parasites crawling threw my skin. I filed 25 sick calls back to back, written to Mr. Burns, Mr. Cole, Mr. Dittman – nothing is being done and Mr. Dittman is allowing his workers [illegible] for until I start spitting up my kosher meals.

ECF No. 5.

In response to the complaint, Defendants have filed a motion to dismiss [ECF No. 16] and, despite being given the opportunity to do so, Plaintiff has failed to file a brief in opposition to that motion.

### B. Standards of Review

#### 1. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

**2. Motion to dismiss pursuant to Rule 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469,

at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

**C.    The Exhaustion Requirement of the Prison Litigation Reform Act**

Defendants move to dismiss on the basis of Plaintiff's failure to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

4

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[1] The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[2]

---

[1] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" Small, 728 F.3d 265, 271, quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010). See also Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[2] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

Here, as Defendants point out, Plaintiff admits in his complaint that he did not fully and properly exhaust his grievance prior to filing the instant lawsuit. Instead, Plaintiff explains that his grievance is "still pending." See ECF No. 5.[3] Moreover, Defendants have provided the Declaration of Dorina Varner, the Chief Grievance Officer of the Secretary's Office of Inmate

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013); Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Grievances and Appeals, who swears that Plaintiff has not exhausted any grievance related to the issue raised in this lawsuit. See ECF No. 17-2, pages 2-4. Plaintiff has filed to make any argument in opposition to Defendants' motion.

Accordingly, because Plaintiff has not exhausted his administrative remedies in accordance with the requirements of the PLRA, the motion to dismiss should be granted and this case should be dismissed in its entirety.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion to dismiss filed by Defendants [ECF No. 16] be granted. The Clerk of Courts should be directed to close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: October 28, 2014